FILED
2020 Mar-06 AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDRETTI WASHINGTON, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number<br>) 2:18-CV-1623-AKK |
| ANDREW SAUL,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Andretti Washington brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, for the reasons stated below, the court will affirm the decision denying benefits.

## I. Procedural History

Washington is a 46-year-old male who lives with his mother in Shelby, Alabama. On June 4, 2015, he applied to the SSA for disability insurance benefits and supplemental security income. R. 189–98. Washington alleged that he was disabled and unable to work due to various mental health issues, including schizophrenia, paranoia, and a polysubstance dependence. *See* R. 69. The SSA

denied his claims, R. 121, and Washington requested a hearing before an ALJ, R. 129, 131. After the hearing, the ALJ also denied his claims. R. 8–23. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1–7. Having exhausted his administrative remedies, Washington filed this action pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a)–(f). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Commissioner;

(4) whether the claimant is unable to perform his or her past work; and

2

(5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)–(f)). The claimant has the burden of proof for the first four steps, but the burden shifts to the Commissioner for the fifth step. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

### III. The ALJ's Decision

In performing the five-step analysis, the ALJ found that Washington met step one because he had "not engaged in substantial gainful activity" since the alleged onset date of his disability. R. 14. Next, the ALJ found that Washington satisfied step two because he suffers from the severe impairments of "psychotic disorder, polysubstance abuse, schizophrenia, and cannabis abuse." *Id.* Proceeding to step three, the ALJ determined that Washington "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.*

At step four, the ALJ found that Washington has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations":

> The claimant can understand, remember, and carry out simple instructions. He can maintain attention and concentration for 2-hour periods at a time. He can make simple, work-related decisions and can adapt to routine and infrequent workplace changes. He can perform jobs that do not require interaction with the general public and can have occasional interaction with coworkers. He can perform jobs that do not require a production rate or pace.

R. 15. The ALJ further found that Washington had past relevant work as an electroplating laborer, and that, given his RFC, Washington is unable to perform this work. R. 17.

Lastly, at step five, the ALJ considered Washington's "age, education, work experience, and [RFC]," and determined that "there are jobs that exist in significant numbers in the national economy that [he] can perform." R. 18. For that reason, the ALJ concluded that Washington is not disabled. *Id.*

### IV. Standard of Review

The court reviews the ALJ's factual findings under the substantial evidence standard. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence "is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citation omitted). The court must review the entire record, including the parts unfavorable to the ALJ's decision, to determine whether substantial evidence exists in support of that decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990). But the court "may not decide the facts anew, reweigh the evidence, or substitute

[its] judgment" for the ALJ's. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If supported by substantial evidence, the court must affirm the ALJ's factual findings even if the evidence preponderates against those findings. *Martin*, 894 F.2d at 1529.

In contrast, the court reviews *de novo* whether the ALJ applied the correct legal standard. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In this way, the court's review of the Commissioner's decision is "demarcated by a deferential reconsideration of the findings of fact and an exacting examination of the conclusions of law." *Martin*, 894 F.2d at 1529.

### V. Analysis

Washington raises the following issues: (1) whether substantial evidence supports the ALJ's decision that Washington's impairments do not meet or equal a listed impairment; (2) whether substantial evidence supports the ALJ's RFC finding; and (3) whether the ALJ should have ordered an additional medical consult. The court will address each issue in turn.

#### A.

For a claimant to meet or equal a listing for schizophrenia and other psychotic disorders, the claimant must satisfy both Paragraph A and either Paragraph B or Paragraph C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03. The ALJ found that Washington satisfied Paragraph A, but that he did not satisfy Paragraphs B or C.

Washington argues that substantial evidence does not support the ALJ's findings with respect to Paragraphs B and C.

Under Paragraph B, the ALJ evaluates how the claimant's mental disorder limits her functioning in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. § 12.00(A)(2)(b). To meet the Paragraph B criteria, the claimant must have an extreme limitation in one of these areas, or a marked limitation in two of these areas. *Id.* In this case, the ALJ found that Washington had only a moderate limitation in each of the four areas. R. 14. Washington disagrees and contends that substantial evidence supports a finding of at least a marked limitation in the areas of concentrating, persisting, or maintaining pace and adapting or managing oneself.

The function of concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." § 12.00(E)(3). The ALJ found that Washington had a moderate limitation in this function, citing his ability "to cook, clean, and to take care of himself" as evidence. R. 14. Washington responds that he and his social worker both testified that he does not cook or clean.[1] R. 36, 49–50. However, in contrast to her testimony, the social

---

[1] Washington also testified at the hearing that, if he wanted to cook something, he could read and follow the instructions. R. 44.

worker stated in her report that Washington does cook, do laundry, and clean his room. R. 256. And Washington told the consulting psychiatrist that he "[p]repares simple meals for himself," cleans his room, "does his own laundry[,] and loads and unloads [the] dishwasher." R. 354. Thus, there is evidence on both sides of this issue, and substantial evidence supports the ALJ's finding that Washington could complete basic tasks around the house, demonstrating some ability to concentrate, persist, or maintain pace.

The function of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." § 12.00(E)(4). In finding that Washington had a moderate limitation in this function, the ALJ emphasized that Washington has a substance abuse problem but "does better when he is on his medications and off drugs." R. 14. Substantial evidence supports this conclusion. Washington told his treating physician that his paranoia occurs "primarily" when he is on drugs. R. 514. The consulting psychiatrist likewise concluded that Washington's psychosis was "more likely than not secondary to substance use." R. 356. Washington claims that he stopped using drugs about a year before his hearing.[2] R. 31. During that period, Washington also received medication

---

[2] A person is not disabled "if alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Because the ALJ held that Washington is not disabled, the ALJ did not have to decide whether Washington's drug addiction factored into his disability. The court notes, however, that it is not clear from the record if Washington had in fact stopped using drugs. As proof, he and his social worker both testified at the hearing that he had passed a drug test within

7

for his mental health issues. R. 36. While reportedly off drugs and on his medication, Washington consistently told his treating physician that his symptoms had diminished and that he was doing better. R. 540, 542, 546. Given the documented improvement in his condition, the ALJ was justified in deciding that Washington was only moderately limited in this function.

Under Paragraph C, the ALJ evaluates "serious and persistent mental disorders." § 12.00(A)(2)(c). To satisfy Paragraph C, the claimant must show: (1) "a medically documented history of the existence of the disorder over a period of at least 2 years"; (2) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder"; and (3) "[m]arginal adjustment, that is, [a] minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." § 12.03(C). The ALJ found that Washington did not satisfy the third requirement, because he "has more than a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." R. 15.

Washington argues that this finding is not supported by substantial evidence.

---

the last year. R. 35, 46. But there are only three drug tests in the record—one from more than two years before the hearing, doc. 497; one from about one year before the hearing, doc. 479; and one from ten months before the hearing, doc. 463—and Washington tested positive for meth on each drug test.

8

However, most of Washington's argument focuses on whether he satisfies the second requirement, which the ALJ did not dispute. *See* doc. 10 at 13–16. The only point he makes regarding the third requirement is that there was no evidence before the ALJ concerning his "*current* level of functioning," and thus no basis to conclude that he had more than a minimal capacity to adapt to changes and demands. *Id.* at 14 (emphasis in original). This contention is belied by Washington's testimony at the hearing about his current condition, R. 29–44, and the evidence before the ALJ that included treatment records from as recent as one week before the hearing, R. 542. Put simply, the ALJ had evidence regarding Washington's current level of functioning.

In conclusion, the ALJ's decision that Washington's impairments did not meet or equal a listing is supported by substantial evidence.

B.

Washington also argues that the ALJ's finding about his RFC is not supported by substantial evidence. A claimant's RFC "is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner assesses the claimant's RFC at step four and uses it to decide whether the claimant can perform any past relevant work. § 404.1545(a)(5)(i). If the claimant cannot do any past relevant work, the Commissioner uses the same RFC assessment at step five to determine if the claimant can perform "any other work that exists in the national

economy." § 404.1545(a)(5)(ii). The Commissioner must consider all the claimant's impairments together, based on all the evidence in the record, to make the RFC assessment. § 404.1545(a)(1)–(2).

Washington incorrectly asserts that the Commissioner bears the burden of establishing his RFC. *See Langley v. Astrue*, 777 F. Supp. 2d 1250, 1259–60 (N.D. Ala. 2011) (providing a thorough analysis of why the Commissioner does not bear the burden of establishing a claimant's RFC). "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). Consequently, the burden is on the claimant at steps one through four of the sequential process. *Washington*, 906 F.3d at 1359. The Commissioner assesses the claimant's RFC at step four, when the burden lies with the claimant. Though the Commissioner uses the RFC assessment at step five as well, the assessment is actually done at step four. *See* § 404.1545(a)(5). For this reason, the SSA has explained that it is "not responsible for providing additional evidence about your [RFC] [at step five] because [it] will use the same [RFC] assessment that [it] used [at step four] to determine if you can do your past relevant work." 20 C.F.R. § 404.1560(c)(2).

Washington argues that the ALJ's RFC assessment is not supported by substantial evidence for two reasons. First, he contends incorrectly that the ALJ

must base the RFC assessment on a treating physician's opinion. The RFC assessment is not a medical opinion, it is a decision on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2); *see also Langley*, 777 F. Supp. 2d at 1252–58. The Commissioner will consider medical evidence on the subject, but the rules do not say that the Commissioner must obtain a physician's opinion to make an RFC assessment. The cases that Washington cites to suggest otherwise merely hold that a physician's opinion is necessary when the Commissioner rejects a treating physician's assessment. *See Dyas v. Astrue*, No. 10-0035-N, 2010 WL 4117030 at *2 (S.D. Ala. Oct. 19, 2010); *Doss v. Astrue*, No. 07-0375-C, 2007 WL 4570551 at *3 (S.D. Ala. Dec. 20, 2007)

Second, Washington contends that when the ALJ presented her RFC assessment to the vocational expert in the form of a hypothetical, she failed to include his schizophrenia and hallucinations. Washington notes that "[i]n order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), *superseded by regulation on other grounds as stated in Washington*, 906 F.3d at 1360–61. But the hypothetical does not have to list all of the claimant's alleged diagnoses. Instead, the critical point is that the hypothetical reflect all of the claimant's limitations. Here, in light of Washington's alleged schizophrenia and hallucinations, the ALJ found that

Washington could not perform work that required him to interact with the general public, or with his co-workers more than occasionally. R. 17. Additionally, the ALJ found that Washington could adapt only to "routine and infrequent changes in the workplace." R. 16. In this way, Washington's impairments were reflected in his RFC assessment.[3]

Substantial evidence thus supported the ALJ's RFC assessment.

C.

Lastly, Washington contends that the ALJ should have ordered an additional consult because there is a gap in his medical records in 2016 and there is a paucity of records from after he quit using drugs. However, a review of the record shows ample evidence of treatment records throughout 2016. *See generally* R. 400–533. And assuming Washington quit using drugs in late 2016, *see supra* note 2, the evidence includes treatment records covering February through July of 2017 (when the hearing was held), R. 540–49. Washington's argument is thus without merit.

## VI. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's final decision is due to be affirmed. A

---

[3] Washington also points out that the hypothetical did not take into account any side effects from his medication. Washington testified that he takes separate medication for the side effects. R. 36. Because the side effects were being treated, and there is no evidence they persisted in spite of the treatment, the ALJ was justified in not finding any limitation from the side effects.

separate order in accordance with this memorandum will be entered.

    **DONE** the 6th day of March, 2020.

                                                                             _____
                                                                                **ABDUL K. KALLON**
                                                                   UNITED STATES DISTRICT JUDGE